Nos. 23-4354 and 23-4356

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

RENO MAY, ET AL.,
*Plaintiffs-Appellees*,

V.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF CALIFORNIA,
*Defendant-Appellant*.

———————————

**On Appeal from the United States District Court
for the Central District of California**
No. 8:23-cv-01696-CJC-ADSx
The Honorable Cormac J. Carney, Judge

———————————

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR A STAY PENDING APPEAL AND FOR AN INTERIM
ADMINISTRATIVE STAY**

<u>**RELIEF REQUESTED BY DECEMBER 31, 2023**</u>

———————————

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
MARK R. BECKINGTON
*Supervising Deputy Attorneys General*

ROBERT L. MEYERHOFF
TODD GRABARSKY
JANE REILLEY
LISA PLANK
CAROLYN DOWNS
*Deputy Attorneys General*
CALIFORNIA DEPARTMENT OF JUSTICE
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
  Telephone: (213) 269-6177
  Email: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Rob Bonta as Attorney
General of the State of California*

December 22, 2023

(*Additional caption appears on next page*)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

MARCO ANTONIO CARRALERO, ET AL.,

*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF CALIFORNIA,

*Defendant-Appellant.*

_____

## On Appeal from the United States District Court
## for the Central District of California
No. 8:23-cv-01798-CJC-ADSx
The Honorable Cormac J. Carney, Judge

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................1

Background..........................................................................................................4

    A.    California's Longstanding Restrictions on Firearms in Sensitive Places ........................................................................................................4

    B.    *Bruen* Reaffirms that Sensitive Places Restrictions Are Constitutional..............................................................................................4

    C.    SB 2 Prohibits Carriage of Handguns in Additional Sensitive Places ........................................................................................................6

    D.    The District Court Enjoins Crucial Aspects of SB 2 ...........................8

Argument.............................................................................................................9

I.     The Attorney General Is Likely to Succeed on the Merits...........................11

II.    The Equitable Factors Weigh in Favor of a Stay .........................................20

III.   In the Alternative, The Court Should Partially Stay the District Court's Injunctions Pending Appeal ...........................................................22

Conclusion.........................................................................................................24

Statement of Related Cases ...............................................................................25

Certificate of Compliance..................................................................................26

# TABLE OF AUTHORITIES

**Page**

CASES

*Antonyuk v. Chiumento*
  __ F.4th __ (2d Cir. Dec. 8, 2023) .............................................*passim*

*Bonidy v. U.S. Postal Serv.*
  790 F.3d 1121 (10th Cir. 2015).........................................................19

*Coal. for Econ. Equity v. Wilson*
  122 F.3d 718 (9th Cir. 1997)..............................................................21

*District of Columbia v. Heller*
  554 U.S. 570 (2008) ...........................................................................6

*Duncan v. Bonta*
  83 F.4th 803 (9th Cir. 2023) (en banc)..........................................2, 21

*E. Bay Sanctuary Covenant v. Biden*
  993 F.3d 640 (9th Cir. 2021)...............................................................1

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*
  512 F.3d 1112 (9th Cir. 2008).............................................................21

*Goldstein v. Hochul*
  2023 WL 4236164 (S.D.N.Y. June 28, 2023)....................................11

*Humane Soc'y of U.S. v. Gutierrez*
  558 F.3d 896 (9th Cir. 2009)..............................................................10

*Kipke v. Moore*
  2023 WL 6381503 (D. Md. Sept. 29, 2023) .............................*passim*

*Koons v. Att'y Gen.*
  No. 23-1900 (3d Cir. June 20, 2023),.......................................2, 13, 15

*Leiva-Perez v. Holder*
  640 F.3d 962 (9th Cir. 2011)..............................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Maryland v. King*
567 U.S. 1301 (2012) ................................................................2, 21

*Md. Shall Issue, Inc. v. Montgomery Cnty.*
2023 WL 4373260 (D. Md. July 6, 2023).........................11, 13, 15, 19

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
142 S. Ct. 2111 (2022) .................................................................*passim*

*Nken v. Holder*
556 U.S. 418 (2009) ..............................................................................2

*Stormans, Inc. v. Selecky*
586 F.3d 1109 (9th Cir. 2009)..............................................................22

*United States v. Allam*
2023 WL 5846534 (E.D. Tex. June 14, 2023) ....................................19

*United States v. Class*
930 F.3d 460 (D.C. Cir. 2019) ............................................................18

*United States v. Dorosan*
350 F. App'x 874 (5th Cir. 2009)........................................................19

*We the Patriots, Inc. v. Grisham*
2023 WL 6622042 (D.N.M. Oct. 11, 2023) ..................................11, 13

*Wolford v. Lopez*
2023 WL 5043805 (D. Haw. Aug. 8, 2023)...............................3, 15, 20

**STATUTES**

Cal. Penal Code § 626.9 ........................................................................4

Cal. Penal Code § 26150 ........................................................................6

Cal. Penal Code § 26202 ........................................................................7

Cal. Penal Code § 26155 ........................................................................7

## TABLE OF AUTHORITIES
### (continued)

**Page**

Cal. Penal Code § 26230 ...................................................................passim

N.J. Stat. Ann. §§ 2C:58-4.6 ....................................................................15

**COURT RULES**

9th Cir. Rule 3-3 .......................................................................................22

**OTHER AUTHORITIES**

David B. Kopel, Background Checks for Firearms Sales and Loans:
Law History, and Policy, 53 Harv. J. on Legis. 303, 346 (2016).......................16

**EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR
A STAY PENDING APPEAL AND AN ADMINISTRATIVE STAY**

## INTRODUCTION

The Attorney General respectfully requests that the Court grant a stay pending

appeal of the district court's preliminary injunction.  The district court enjoined a

number of the sensitive places restrictions of Senate Bill 2, a bill that enacted a

shall-issue permitting regime for the concealed carry of firearms within the State.

Preliminary Injunction 2.[1]  The enjoined provisions limit the carriage of firearms in

places that are sensitive by virtue of the activities performed there (e.g., the

exercise of other constitutional rights, governmental operations, and financial

transactions), the nature of the spaces (e.g., large gatherings, confined spaces, and

where dangerous activities occur), and the people who populate those spaces (e.g.,

schoolchildren and other vulnerable populations).  Absent a stay, the district

court's injunction will prevent enforcement of the challenged provisions of SB 2,

which would otherwise go into effect on January 1, 2024.

The "purpose of a stay . . . is to give the reviewing court the time to act

responsibly," *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir.

2021) (cleaned up), "ensuring that appellate courts can responsibly fulfill their role

---

[1] The district court's preliminary injunction is attached as Exhibit 1 to the
accompanying Declaration of Robert L. Meyerhoff.  The district court's
accompanying order ("Order"), is attached as Exhibit 2 to the declaration.

in the judicial process," *Nken v. Holder*, 556 U.S. 418, 427 (2009). Because an injunction barring enforcement or application of a duly-enacted statute poses a substantial risk of harming the public interest, courts routinely issue stays pending appeal when a lower court enjoins a statute. *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1302-1303 (2012) (Roberts, C.J., in chambers); *Duncan v. Bonta*, 83 F.4th 803, 807 (9th Cir. 2023) (en banc). Indeed, other courts of appeals have issued stays in cases involving challenges to similar sensitive places laws. *See Antonyuk v. Chiumento*, __ F.4th __, 2023 WL 8518003, at *2, *7 (2d Cir. Dec. 8, 2023) (noting Second Circuit's issuance of stays in several related cases); *Koons v. Att'y Gen.*, No. 23-1900 (3d Cir. June 20, 2023), Dkt. 29 (Meyerhoff Decl., Ex. 3). The same outcome is warranted here.

The Attorney General is likely to succeed on the merits of his appeals because the Supreme Court reaffirmed in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) that governments may identify certain "'sensitive places' where arms carrying [may] be prohibited consistent with the Second Amendment." *Id.* at 2133. Since *Bruen*, several federal district courts have considered, at the preliminary injunction stage, Second Amendment challenges to state laws restricting firearms in sensitive places, as has the Second Circuit in its recent *Antonyuk* decision. For several of the sensitive places restrictions challenged here, at least one (if not more) of these district courts has refused to

2

issue an injunction of a similar restriction after concluding that the plaintiffs would be unlikely to succeed on the merits of a Second Amendment challenge to the restriction.  Only one other district court, *Wolford v. Lopez*, 2023 WL 5043805 (D. Haw. Aug. 8, 2023), has done as the district court did in this case and granted Plaintiffs' motions in full, enjoining *every* aspect of SB 2 that Plaintiffs challenged.[2]  Indeed, the breadth of the district court's injunction exceeds that of any other post-*Bruen* decision on sensitive places.

To reach that result, the district court distorted *Bruen*'s methodology, dismissed the State's evidence of historical analogues, and relied on policy assumptions about crime and gun ownership that are not properly part of the *Bruen* analysis.  At a minimum, the Attorney General's appeals raise serious and substantial legal questions justifying a stay pending appeal.

Equitable considerations also support a stay while this Court considers those merits questions.  SB 2 is the State's carefully crafted legislative effort to comply with *Bruen* while protecting public safety—including the safety of children and other vulnerable populations.  The law is set to go into effect on January 1, 2024. If the district court's order is not stayed, crucial provisions of SB 2 will be blocked,

---

[2] An appeal in *Wolford* is currently pending before this court in case no. 23-16164. The appeal is fully briefed and may be set for argument as soon as April 2024.  *See Wolford v. Lopez*, No. 23-16164, Dkt. 65.

allowing concealed carry licensees to carry handguns in a host of sensitive public places—including playgrounds and parking lots of courthouses—while the appeals are pending.

If this Court is unable to rule on this motion before December 31, 2023, the Attorney General respectfully requests that the Court enter an administrative stay until the motion is resolved.

## BACKGROUND

### A.  California's Longstanding Restrictions on Firearms in Sensitive Places

California has long restricted carrying firearms in school zones (Cal. Penal Code § 626.9); state or local public buildings (*id.* § 171b); the State Capitol and its grounds, any legislative office, the office of the Governor or other constitutional officers, and Senate and Assembly hearing rooms while a hearing is conducted (*id.* § 171c); the Governor's Mansion and Senate or Assembly member residences without permission (*id.* § 171d); airports (*id.* § 171.5); and the "sterile areas" of public transportation facilities (*id.* § 171.7).  Those sensitive place restrictions are not at issue in these appeals.

### B.  *Bruen* Reaffirms that Sensitive Places Restrictions Are Constitutional

In *Bruen*, 142 S. Ct. 2111, the Supreme Court held that it violates the Second Amendment to only issue public-carry licenses to applicants who demonstrate a special need to carry a firearm in public.  Under *Bruen*, courts must first determine

4

whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129-2130. If so, "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

To satisfy its burden, a government must identify a "well-established and representative historical *analogue*" to the challenged law. *Bruen*, 142 S. Ct. at 2133. The analogue must be "relevantly similar," but there is no requirement for the government to identify a "historical *twin*" or "dead ringer." *Id.* at 2132-2133. The Court emphasized that "analogical reasoning under the Second Amendment" is not a "regulatory straightjacket." *Id.* at 2133. In particular, it observed that "cases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132.

While the Court announced its new text-and-history standard for reviewing Second Amendment claims, the Court repeatedly assured that its decision did not cast doubt on the validity of "'longstanding' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings.'" *Bruen*, 142 S. Ct. at 2133 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). *Bruen* observed that "[a]lthough the historical record yields relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited—e.g., legislative assemblies, polling places, and courthouses—we are

also aware of no disputes regarding the lawfulness of such prohibitions." *Bruen*, 142 S. Ct. at 2133. The Court thus "assume[d] it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment." *Id.*; *see also id.* at 2162 (Kavanaugh, J., concurring); *id.* at 2181 (Breyer, J., dissenting) ("The Court affirms *Heller*'s recognition that States may forbid public carriage in 'sensitive places.'"). And consistent with *Heller*, *Bruen* also explained that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Bruen*, 142 S. Ct. at 2133; *see Heller*, 544 U.S. at 627 n.26 (noting that it listed "presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive").

### C. SB 2 Prohibits Carriage of Handguns in Additional Sensitive Places

Prior to *Bruen*, California law authorized a licensing authority to issue a concealed carry license only to applicants who demonstrated "good cause" and met other licensing requirements. Cal. Penal Code § 26150, amended by Senate Bill 2 (2023). Following *Bruen*, the Attorney General promptly directed law enforcement officials in the State to no longer require "a demonstration of good cause in order to obtain a concealed carry permit." June 24, 2022 Legal Alert (Meyerhoff Decl., Ex. 4). The California Legislature also passed SB 2 on

September 12, 2023, to adhere to *Bruen*'s requirements and in furtherance of "compelling interests in protecting both individual rights and public safety." SB 2 (2023-2024 Reg. Sess.), § 1(a). In approving SB 2, the Legislature cited "a wealth of empirical studies [showing] that crime is higher when more people carry firearms in public places" (*id.* ¶ 1(d)) and found that "[b]roadly allowing individuals to carry firearms in public areas increases the number of people wounded and killed by gun violence" (*id.* ¶ 1(e)). Governor Newsom signed SB 2 into law on September 26, 2023, and it will take effect on January 1, 2024.

In addition to its sensitive places provisions, SB 2 also substantially modifies California's concealed carry weapon (CCW) licensing criteria by, among other things, implementing a shall-issue licensing regime and removing the requirements that CCW applicants establish "good cause" and "good moral character." *See* Cal. Penal Code §§ 26150, 26155, 26202, *amended by* Senate Bill 2 (2023).

As relevant here, SB 2 also prohibits concealed carry licensees from carrying firearms into several locations deemed to be sensitive places. This appeal does not involve many of those locations: schools (*id.*, (a)(1)), preschools (*id.*, (a)(2)), executive or legislative branch buildings (*id.*, (a)(3)), judicial buildings (*id.*, (a)(4)), local government buildings (*id.*, (a)(5)), correctional facilities (*id.*, (a)(6)), higher education facilities (*id.*, (a)(14)), airports or passenger vessel terminals (*id.*,

7

(a)(18)), Nuclear Regulatory Commission facilities (*id*., (a)(21)), law enforcement facilities (*id*., (a)(24)), polling places (*id*., (a)(25)), and any other places prohibited by other provisions of state, federal, or local law (*id*., (a)(26)-(29)), except as to those provisions which also restrict carriage in the parking lots of those places. *May, et al. v. Bonta*, Case No. 23-cv-01696, Dkt. 13; *Carralero, et al. v. Bonta*, Case No. 23-cv-01798, Dkt. 7. The challenged provisions limit licensees from carrying firearms in health care facilities (*id*., (a)(7)), public transit (*id*., (a)(8)), establishments that sell liquor for consumption on site (*id*., (a)(9)), public gatherings and special events (*id*., (a)(10)), playgrounds and youth centers (*id*., (a)(11)), local parks and athletic facilities (*id*., (a)(12)), state parks (*id*., (a)(13)), casinos (*id*., (a)(15)), stadiums (*id*., (a)(16), libraries (*id*., (a)(17)), amusement parks (*id*., (a)(19)), museums and zoos (*id*., (a)(20)), houses of worship without the operator's consent (*id*., (a)(22)), financial institutions (*id*., (a)(23)), on private property without the owner's consent (*id*., (a)(26)), and in the parking lots of each of the sensitive places identified in SB 2 which were defined to include the parking lot of that place. *Id*.

### D.    The District Court Enjoins Crucial Aspects of SB 2

On September 12, 2023, and September 26, 2023, respectively, the *May* and *Carralero* Plaintiffs filed separate lawsuits challenging certain provisions of SB 2. *May* Dkt. 1; *Carralero* Dkt. 1. In each case, Plaintiffs moved for a preliminary

injunction. *May* Dkt. 13, 13-1; *Carralero* Dkt. 6, 6-1. The *May* Plaintiffs submitted a declaration from their purported historical expert, Clayton Cramer, in support of their motion (*May* Dkt. 13-7); the *Carralero* Plaintiffs did not submit any expert declarations.

The Attorney General filed oppositions to both the *May* and *Carralero* Plaintiffs' motions on November 3, 2023, supported by thirteen declarations from expert historians (*May* Dkt. 21-1 to 21-13; *Carralero* Dkt. 20-1 to 20-13), as well as a four-volume Compendium of Historical Laws and Treatises (*May* Dkt. 22; *Carralero* Dkt. 21).

The district court held a hearing on the motions on December 20, 2023. At the conclusion of oral argument, the Attorney General requested that any injunctive relief granted by the district court be stayed pending appeal. Later that day, the district court granted both motions in their entirety and entered a preliminary injunction in each case. *May* Dkt. 45 and 46; *Carralero* Dkt. 41 and 42.

## ARGUMENT

A movant seeking a stay pending appeal "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in his favor, and that a stay is in the public interest." *Humane Soc'y of U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009)

(citing *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  To obtain a stay, the Attorney General "need not demonstrate that it is more likely than not that [the State] will win on the merits" or that "ultimate success is probable."  *Leiva-Perez v. Holder*, 640 F.3d 962, 966-967 (9th Cir. 2011).  Rather, "a substantial case on the merits" or "serious legal questions" will suffice "so long as the other factors support the stay."  *Id.*

The Attorney General satisfies that standard.  The district court misapplied the *Bruen* standard.  Under the correct legal standard, Plaintiffs failed to show a likelihood of success on the merits as to any of the challenged places, and their requests for injunctive relief should have been denied.  At a minimum, several federal court rulings—including a recent decision from the Second Circuit Court of Appeals—upholding sensitive places restrictions similar to those in SB 2 reflect that this case raises serious and substantial legal questions justifying a stay.  And the equitable factors also weigh in favor of a stay.  Absent a stay, the district court's preliminary injunction will prevent key portions of SB 2 from going into effect on January 1, 2024, threatening public safety during the pendency of the appeals.

## I.    THE ATTORNEY GENERAL IS LIKELY TO SUCCEED ON THE MERITS

The district court's decision misapplies the *Bruen* framework and is at odds with the Second Circuit's recent decision upholding similar sensitive place

restrictions and several district court decisions declining to enjoin similar laws.
*See Antonyuk v. Chiumento*, __ F.4th __, 2023 WL 8518003 (2nd Cir. Dec. 8,
2023); *Md. Shall Issue, Inc. v. Montgomery Cnty.*, 2023 WL 4373260 (D. Md. July
6, 2023); *Kipke v. Moore,* 2023 WL 6381503 (D. Md. Sept. 29, 2023), *Goldstein v.
Hochul*, 2023 WL 4236164 (S.D.N.Y. June 28, 2023); *We the Patriots, Inc. v.
Grisham*, 2023 WL 6622042 (D.N.M. Oct. 11, 2023). As that authority illustrates,
the Attorney General is likely to succeed on the merits of these appeals. At a
minimum, the body of precedent reflects that the legal questions are of sufficient
seriousness to justify a stay pending appeal.

1. **Playgrounds and youth centers** (Cal. Penal Code § 26230(a)(11)), **local
parks** (*id.*, (a)(12)), **libraries** (*id.*, (a)(17)), **and museums and zoos** (*id.*, (a)(20)).
*Bruen* described it as "settled" that schools are a "'sensitive place[]' where arms
carrying could be prohibited consistent with the Second Amendment," and holds
that courts can "use analogies . . . to determine that modern regulations prohibiting
the carry of firearms in *new* and analogous sensitive places are constitutionally
permissible." 142 S. Ct. at 2133. And the Second Circuit has held that there is an
American "tradition of prohibiting firearms in places frequented by children"
which "straightforwardly supports the regulation of firearms" in such places,
including zoos. *Antonyuk*, 2023 WL 8518003, at *65; *id*. at *63-65 (also vacating
injunction preventing the State from enforcing firearms carriage restrictions in

11

parks).  Yet the district court here enjoined SB 2's restrictions on firearms carriage in several locations that implicate similar concerns: playgrounds and youth centers (Cal. Penal Code § 26230(a)(11)), local parks (*id.*, (a)(12)), libraries (*id.*, (a)(17)), and museums and zoos (*id.*, (a)(20)).

The district court erred because the challenged provisions, like restrictions on the carriage of arms at schools, are consistent with the Second Amendment.  These locations closely resemble schools in their purpose and the populations they serve, and there are historical analogues that support restricting firearms in each of these places.  *See* Opp. at 31-36.  For example, for libraries, museums, and zoos, the Attorney General identified numerous relevantly similar historical analogues which restricted firearms in places where people assembled for "educational" or "scientific" purposes, *id.*, 18-19 (identifying an 1869 Tennessee law, an 1870 Texas law, and 1874 Missouri law, among many others).

On that basis, several district courts applying *Bruen*'s reasoning have concluded that these types of locations are sensitive—including because they serve children and are thus closely analogous to schools.  *See, e.g., Kipke*, 2023 WL 6381503, at *7 ("[M]useums are like schools because they serve an educational purpose and are often geared towards children."); *We the Patriots, Inc.*, 2023 WL 6622042, at *10 ("[P]laygrounds are often associated with schools and therefore the inference that they are sensitive places under *Bruen* is appropriate."); *Maryland*

12

*Shall Issue, Inc.*, 2023 WL 4373260, at *10 (refusing to enjoin restrictions on carrying firearms in parks); *Koons*, 2023 WL 3478604, at *82 (refusing to enjoin a law banning firearms at playgrounds).[3]

The district court reached a contrary conclusion, opining that "regulating firearms at schools is different than playgrounds and youth centers" because parents deliver their "children to the state (sometimes with armed officers) for protection" and because school grounds are "restricted" areas where unauthorized persons generally may not enter. Order at 26-27. That is no basis to enjoin the challenged provisions of SB 2. As explained in the Attorney General's opposition and not disputed by either set of Plaintiffs in their replies, as recently as 2005, almost 75% of public primary schools had no security at all to "restrict" the school grounds, and only 16% had any armed security staff. Opp. at 38 & n.30.

More to the point, while the district court suggested that a place cannot be sensitive if there is no "provided security . . . [to] ensure that visitors are not carrying a weapon," the presence or absence of security is not what makes a place sensitive. *Bruen* did not identify security as a principle for identifying the sensitive places it listed (schools, government buildings, legislative assemblies, polling

---

[3] The district court in *Koons* reached a different conclusion as to libraries and enjoined restrictions on carriage therein, but that portion of the injunction has been stayed by the Third Circuit. *See* Meyerhoff Decl., Ex. 3.

13

places, and courthouses). 142 S. Ct. at 2133. And, as a matter of historical record, none of the sensitive places identified by the Supreme Court had, as the district court incorrectly assumed, "people st[anding] guard at the entry to the building to ensure that no one was carrying a weapon." Order at 34; *see* Opp. at 38 (noting that historically, legislative assemblies did not have security); *see also Kipke*, 2023 WL 6381503, at *6 ("[B]ecause *Bruen* conclusively named schools among the other examples of sensitive places, . . . Plaintiffs' argument that sensitive places are limited to buildings with comprehensive, state-provided security is baseless.").

2. **Health care facilities** (Cal. Penal Code § 26230(a)(7)), **public transit** (*id.*, (a)(8)), **locations where liquor is sold for consumption on site** (*id.*, (a)(9)), **permitted special events and public gatherings** (*id.*, (a)(10)), **state parks** (*id.*, (a)(13)), **casinos** (*id.*, (a)(15)), **stadiums** (*id.*, (a)(16)), **amusement parks** (*id.*, (a)(19)), **houses of worship where the operator has not given express consent** (*id.*, (a)(22)), and **financial institutions** (*id.*, (a)(23). Each of the challenged provisions is consistent with a historical tradition. *See* Opp. at 10-31. For example, the Attorney General identified more than a dozen relevantly similar analogues, if not historical twins, for the State's restrictions on carriage at permitted special events and public gatherings, Opp. at 18-19, including at least a half dozen laws that restricted carriage at any "public assembly." *Id*.

Several other federal courts addressing the same or similar sensitive places have likewise concluded that the restrictions in similar locations are constitutionally permissible. *See, e.g.*, *Antonyuk*, 2023 WL 8518003, at *41-45, *66-76 (vacating district court's injunctions as to certain health care centers, premises licensed for alcohol consumption, and theaters); *Kipke*, 2023 WL 6381503, at *8, *10, *15 (declining to enjoin restrictions for health care facilities, public transit, and stadiums, racetracks, amusement parks, and casinos); *Md. Shall Issue, Inc.*, 2023 WL 4373260, at *10, *14-16 (declining to enjoin sensitive places restrictions for places of worship and buffer zones near hospitals). [4]

The court's contrary ruling as to all of these places was flawed.

First, the district court rejected the historical analogues identified by the State because none of those analogues are "consistent with a tradition of regulating firearms by preventing people with special permits who have been through background checks and training." Order at 31. This reasoning would mean that no

---

[4] Granted, some district courts (including in some of the same cases) have enjoined sensitive-places restrictions akin to one or more of those at issue here. *See, e.g.*, *Kipke*, 2023 WL 6381503 (*inter alia*, public demonstrations and places which sell alcohol); *Koons*, 2023 WL 3478604 (*inter alia*, casinos and health care facilities). But in *Koons*, the Third Circuit has largely stayed the district court's injunction pending appeal. *See Koons v. Attorney General*, No. 23-1900 (3rd Cir. June 20, 2023), Dkt. 29 (Meyerhoff Decl., Ex. 3) (granting stay as to N.J. Stat. Ann. §§ 2C:58-4.6(a)(6), (a)(9), (a)(10), (a)(12), (a)(15), (a)(17), (a)(18), (a)(21), which apply, among other things, to bars and restaurants, theaters and stadiums, casinos, and health care facilities).

modern sensitive places restriction in a state with permitting and training requirements could be relevantly similar to a historical analogue from the 18th or 19th century, given that the permitting and training requirements during those periods were much less prevalent (if they even existed at all) than they are today. *See* David B. Kopel, Background Checks for Firearms Sales and Loans: Law, History, and Policy, 53 Harv. J. on Legis. 303, 346 (2016) ("State laws requiring a permit to purchase or a permit to possess a handgun were a rarity as of the early 1920s."). It is also inconsistent with *Bruen*'s acceptance of restrictions in certain sensitive places. 142 S. Ct. at 2133; *see also id.* at 2162 (Kavanaugh, J. concurring) (noting that 49 states had licensing regimes, some of which have training requirements). The district court's apparent conclusion that a state cannot recognize "*new* and analogous sensitive places," *id.* at 2133, if it has a licensing regime cannot be correct and has not been adopted by any other court.

This flawed conclusion undergirds the court's decision as to many of the sensitive places in the injunction. *See, e.g.,* Order at 17 (finding that the "proffered [historical] analogies" for the restriction on carriage in health care facilities to not be "'relevantly' similar' because SB2 . . . prevents people that law enforcement has vetted and who have been trained on the carry and use of their handguns from carrying those handguns . . . ."). Concluding that SB 2's limits are more burdensome because they sit atop licensing requirements finds no support in *Bruen*

16

and appears to have shaped the district court's ruling as to all of the challenged places.

Second, the district court failed to apply the "more nuanced approach" called for in cases implicating "dramatic technological change" or "unprecedented societal concerns." *Bruen*, 142 S. Ct. at 2132. This more nuanced approach is applicable in those circumstances because "regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id*. In this case, the Attorney General presented evidence from leading historians that many of the sensitive locations restricted by SB 2 (*e.g.*, health care facilities, public transit, stadiums, amusement parks) did not exist during the Founding and/or Reconstruction eras, or if they did, did not exist in their modern form. *See, e.g.,* Opp. at 26 (casinos, stadiums, and amusement parks "did not exist in their modern form at either the Founding or Reconstruction") (citing Winkler Decl., ¶¶ 23, 27; Brewer Decl., ¶¶ 17–20; Macall Decl., ¶¶ 20, 24–25). The district court elected to apply the more nuanced approach only as to financial institutions, and none of the other sensitive places that implicate similar concerns, even though it did not question the credibility of the Attorney General's experts.

At bottom, the district court erred by effectively requiring the Attorney General to do what *Bruen* expressly disclaims: identify a historical twin. In

17

"requiring . . . the State's analogues to burden Second Amendment rights on behalf of the exact same group in the very same way, the district court disregarded *Bruen*'s caution" that a "dead ringer" is not required.  *Antonyuk*, 2023 WL 8518003, at \*45. And even when the Attorney General did identify a historical twin for several of the challenged provisions, the district court failed to consider those analogues because the Founding and Reconstruction eras did not have the licensing and training regimes that many states (including California) have today.

3.  **Parking lots of sensitive places**, (*id*., (a)(2)-(a)(9), (a)(14)-(a)(24)).  The district court erred in enjoining the parking lot provisions of SB 2 in full, including parking lots for places that were not challenged by the plaintiffs, because buffer zones around indisputably sensitive places fit squarely within the nation's tradition of firearms regulations.  Indeed, numerous circuit and district courts have affirmed the constitutionality of firearms restrictions in the areas around sensitive places post-*Heller* and, in some cases, post-*Bruen*.  *See United States v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019) (concluding that "the same security interests which permit regulation of firearms 'in' government buildings permit regulation of firearms on the property surrounding those buildings"); *see also Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015); *United States v. Dorosan*, 350 F. App'x 874, 875 (5th Cir. 2009); *United States v. Allam*, 2023 WL 5846534 (E.D. Tex. June 14, 2023), at \*23; *Md. Shall Issue*, 2023 WL 4373260, at \*13.

18

A stay is especially warranted as to the district court's injunction about parking lots because of the breadth of the injunction. The district court did not simply enjoin the parking lot provisions for those sensitive place locations that Plaintiffs challenged, but for all of the sensitive place provisions in SB 2. Preliminary Injunction at 2 (enjoining the Attorney General from "implementing or enforcing California Penal Code § 26230 as it pertains to parking areas"). If not stayed, the district court's injunction will allow carriage in the parking lots, *inter alia*, of preschools (Penal Code § 26230(a)(2)), courthouses (*id*., (a)(3)), executive and legislative buildings (*id*., (a)(4)), jails (*id*., (a)(6)), and nuclear facilities (*id*., (a)(21)). Given that *Bruen* has expressly recognized that schools, courthouses, and legislative assemblies are sensitive places; that plaintiffs have not even challenged those designations; and that the overwhelming weight of authority supports the conclusion that the parking lots of sensitive places can also be constitutionally deemed sensitive, a stay of this portion of the injunction is warranted.

4. **Private Property,** Cal. Penal Code § 26230(a)(26). Finally, the district court erred in enjoining the provision of SB 2 that concerns private commercial property open to the public. *See* Order at 35-37. To be sure, every court to consider a challenge to a similar restriction has concluded that it is likely unconstitutional. *See, e.g., Antonyuk*, 2023 WL 8518003, at *85; *Kipke*, 2023 WL 6381503, at *14; *Wolford*, 2023 WL 5043805, at *29. But those decisions fail to

19

appreciate that the law simply preserves the right of property owners to choose whether to allow firearms on their premises by establishing a default rule that firearms are prohibited unless the operator of the property posts a sign indicating otherwise. *See* Cal. Penal Code § 26230(a)(26). Accordingly, this provision does not implicate Plaintiffs' constitutional rights in the first instance because the Second Amendment does not encompass a right to carry firearms on another person's private property. Opp. at 39-43. The district court reasoned that the law "prohibits CCW permitholders from carrying firearms in places open to the public," Order at 11, but failed to grapple with the Attorney General's explanation that a default rule for private property does no such thing. And in rejecting the Attorney General's alternative argument that the default rule is supported by relevant historical analogues, Order at 35-37, the court's order suffers from the same analytical problems identified above, *supra*, pp. 14-18.

## II.   THE EQUITABLE FACTORS WEIGH IN FAVOR OF A STAY

The equitable considerations also favor a stay. As a general matter, the "public interest" is harmed where, as here, a lower court invalidates and enjoins a duly enacted statute. *See, e.g.*, *Maryland*, 567 U.S. at 1303; *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008). And as this Court has recognized, a State necessarily "suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *E.g.*,

20

*Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also Maryland*, 567 U.S. at 1303 (same).

Moreover, as another district court post-*Bruen* has noted, sensitive places regulations further the "public's interest in preventing gun violence." *Kipke*, 2023 WL 6381503, at *17. And as Chief Justice Roberts has recognized, barring a State from enforcing "a duly enacted statute to help prevent these injuries constitutes irreparable harm." *Maryland*, 567 U.S. at 1303 (stay warranted in part by "an ongoing and concrete harm to" the State's "law enforcement and public safety interests"); *Duncan*, 83 F.4th at 806 (granting stay where permitting an injunction to stand would "pose significant threats to public safety").

The balance of harms also weighs in favor of staying the district court's injunction. SB 2's sensitive places restrictions result from a legislative determination that allowing individuals to carry firearms in sensitive places will lead to increased violence and a suppression of other constitutional rights. *See* SB 2 (2023-2024 Reg. Sess.), § 1(a). If the injunction is not stayed, tens of millions of Californians will face a heightened risk of gun violence in places where their children congregate and where they go to exercise their constitutional rights. And that, in turn, increases the risk of "'otherwise avoidable human suffering'" if the carriage of firearms in sensitive places leads to an avoidable shooting. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009).

By contrast, staying the injunction would still allow Plaintiffs to carry firearms in the quintessential public places (*i.e.,* public streets and sidewalks), any privately-owned commercial establishment that chooses to permit such carriage, and any other places not specified in SB 2 or where carriage is not otherwise prohibited by law.  Moreover, the expedited nature of the appeals would limit any harm to Plaintiffs.  Because these appeals challenge a preliminary injunction, they will be subject to this Court's rules for expedited handling of such appeals.  *See* 9th Cir. Rule 3-3.  Indeed, a similar appeal concerning Hawaiʻi's sensitive places law is fully briefed, and may be set for argument as soon as April 2024.  *See Wolford v. Lopez*, No. 23-16164, Dkt. 65.

## III. IN THE ALTERNATIVE, THE COURT SHOULD PARTIALLY STAY THE DISTRICT COURT'S INJUNCTION PENDING APPEAL

The Attorney General has justified a stay of the entirety of the preliminary injunction.  But if the Court is not inclined to stay the entire injunction, it should at a minimum issue a stay of the injunction in part.  In recognition of the weight of authority against the default private property provision (Cal. Penal Code § 26230(a)(26)), for example, the Court could issue a stay of the injunction with the exception of that provision.  *Cf. Antonyuk*, 2023 WL 8518003, at *85.[5]  At the very

---

[5] Of course, even if subsection (a)(26) were to remain enjoined, the parties agree that private businesses could independently elect to restrict the carriage of firearms on their premises.

22

least, the Court should stay the injunction as to the following places: **playgrounds and youth centers** (Cal. Penal Code § 26230(a)(11)), **local parks** (*id.*, (a)(12)), **libraries** (*id.*, (a)(17)), and **museums and zoos** (*id.*, (a)(20))—all of which are particularly sensitive places frequented by children—as well as the **parking lots of those places and the parking lots of sensitive places that Plaintiffs did not challenge** in their preliminary injunction motions (such as courthouses, airports, and nuclear facilities) (*id.*, (a)(2)-(a)(6), (a)(14), (a)(18), (a)(21), and (a)(24)).

## CONCLUSION

The Court should stay the district court's preliminary injunction pending appeal. If the Court does not stay the preliminary injunction in its entirety, it should stay the injunction in part as set forth above. If necessary, the Court should issue an administrative stay until the Court resolves this motion.

Dated:  December 22, 2023          Respectfully submitted,


ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
MARK BECKINGTON
*Supervising Deputy Attorneys General*
ROBERT L. MEYERHOFF
*Deputy Attorney General*


s/ Robert L. Meyerhoff


ROBERT L. MEYERHOFF
*Deputy Attorney General*
*Attorneys for Defendant-Appellant*


24

## STATEMENT OF RELATED CASES

The Attorney General is aware of the following related cases:

- *Wolford v. Lopez*, 9th Cir. No. 23-16164:  Appeal from a preliminary injunction order enjoining certain provisions of Hawai'i's Act 52, which prohibits carrying or possessing firearms in specified locations and premises.


Dated:  December 22, 2023                                    s/ Robert L. Meyerhoff

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing emergency motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 5,450 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).  This emergency motion complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated:  December 22, 2023                                    s/ Robert L. Meyerhoff