Nos. 23-4354 and 23-4356

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RENO MAY, ET AL.,
      *Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF CALIFORNIA,
      *Defendant-Appellant*.

**On Appeal from the United States District Court
for the Central District of California**
No. 8:23-cv-01696-CJC-ADSx
The Honorable Cormac J. Carney, Judge

**REPLY IN SUPPORT OF EMERGENCY MOTION UNDER
CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL
AND FOR AN INTERIM ADMINISTRATIVE STAY**

<u>**RELIEF REQUESTED BY DECEMBER 31, 2023**</u>

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
MARK R. BECKINGTON
*Supervising Deputy Attorneys General*

ROBERT L. MEYERHOFF
TODD GRABARSKY
JANE REILLEY
LISA PLANK
CAROLYN DOWNS
*Deputy Attorneys General*
CALIFORNIA DEPARTMENT OF JUSTICE
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
 Telephone: (213) 269-6177
 Email: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Rob Bonta as Attorney
General of the State of California*

December 29, 2023

(*Additional caption appears on next page*)

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARCO ANTONIO CARRALERO, ET AL.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF CALIFORNIA,
*Defendant-Appellant*.

**On Appeal from the United States District Court for the Central District of California**
No. 8:23-cv-01798-CJC-ADSx
The Honorable Cormac J. Carney, Judge

# TABLE OF CONTENTS

                                                                                                                                  **Page**

Introduction ..................................................................................................1

Argument.....................................................................................................1

      I.      The Attorney General Is Likely to Succeed on the Merits ..................1

            1.      Playgrounds and youth centers, local parks, libraries, and museums and zoos ..................................................................2

            2.      Health care facilities, public transit, locations where liquor is sold for consumption on site, permitted special events and public gatherings, state parks, casinos, stadiums, amusement parks, houses of worship where the operator has not given express consent, and financial institutions ...............................................................................5

      II.     The Equitable Factors Weigh in Favor of Stay....................................9

      III.    At a Minimum, This Court Should Issue a Partial Stay.....................12

Conclusion.................................................................................................12

Certificate of Compliance..........................................................................13

## TABLE OF AUTHORITIES

Page

**CASES**

*Antonyuk v. Chiumento*
 __ F.4th __, 2023 WL 8518003 (2d Cir. Dec. 8, 2023) ..............................*passim*

*Duncan v. Bonta*
 83 F.4th 803 (9th Cir. 2023) (en banc)................................................................10

*Kipke v. Moore*
 2023 WL 6381503 (D. Md. Sept. 29, 2023) ....................................................2, 4

*Koons v. Att'y Gen.*
 No. 23-1900 (3d Cir. June 20, 2023)......................................................1, 4, 5, 12

*Koons v. Platkin*
 2023 WL 3478604 (D.N.J. May 16, 2023) .......................................................3, 4

*Lair v. Bullock*
 697 F.3d 1200 (9th Cir. 2012)................................................................................9

*Leiva-Perez v. Holder*
 640 F.3d 962 (9th Cir. 2011)..................................................................................9

*Maryland v. King*
 567 U.S. 1301 (2012) ............................................................................................10

*McDonald v. City of Chicago, Ill.*
 561 U.S. 742 (2010) ................................................................................................3

*Md. Shall Issue, Inc. v. Montgomery Cnty.*
 2023 WL 4373260 (D. Md. July 6, 2023).............................................................3

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
 142 S. Ct. 2111 (2022) ..................................................................................*passim*

*Nken v. Holder*
 556 U.S. 418 (2009) ................................................................................................9

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. Alaniz*
    69 F.4th 1124 (9th Cir. 2023) ................................................................... 7

*United States v. Class*
    930 F.3d 460 (D.C. Cir. 2019) ................................................................. 5

*We The Patriots, Inc. v. Grisham*
    2023 WL 6622042 (D.N.M. Oct. 11, 2023) ........................................... 3

*Wolford v. Lopez*
    2023 WL 5043805 (D. Haw. Aug. 8, 2023) ............................................ 4

*Wolford v. Lopez*
    No. 23-16164 (9th Cir.) ........................................................................... 1

**STATUTES**

California Penal Code
    § 26230(a)(10) ....................................................................................... 11
    § 26230(c) .............................................................................................. 11
    § 26230(e) .............................................................................................. 11

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Second Amendment ..................................................................... 1, 9, 10

**OTHER AUTHORITIES**

SB 2 (2023-2024 Reg. Sess.), § 1(j) ........................................................... 11

More Than 2,200 Non-Self Defense Deaths Involving Concealed
    Carry Killers Since 2007, Latest Violence Policy Center Research
    Shows, Violence Pol'y Ctr. (Apr. 21, 2022),
    https://perma.cc/MXW4-AWYD ......................................................... 11

# INTRODUCTION

Well-established precedent justifies a stay pending appeal of the district court's injunction, which would otherwise authorize the carriage of firearms in playgrounds, libraries, zoos, and the parking lots of police stations and courthouses, among other places. California's statutory restrictions on firearms in these sensitive places (and others like them) are consistent with the text, history, and tradition of the Second Amendment and should be allowed to take effect pending appeal. Indeed, the only two federal courts of appeals to consider similar stay motions have both granted stays pending appeal. *See Antonyuk v. Chiumento*, __ F.4th __, 2023 WL 8518003, at *2, *7 (2d Cir. Dec. 8, 2023); *Koons v. Att'y Gen.*, No. 23-1900 (3d Cir. June 20, 2023), Dkt. 29 (Meyerhoff Decl. ISO Mot. to Stay, Ex. 3).).[1] A stay is also warranted here.

# ARGUMENT

I. **THE ATTORNEY GENERAL IS LIKELY TO SUCCEED ON THE MERITS**

Plaintiffs' oppositions contend that SB 2 "defie[s] the instructions" of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), *Carralero* Opp. at 1, and characterize the law as a "reflexive and petulant" "political

---

[1] In *Wolford v. Lopez*, Case Nos. 23-16094 and 23-16164 (9th Cir.), this Court denied the State's request for a stay without prejudice because the request was pending in the district court (Case No. 23-cv-265, Dkt. No. 73). The district court has not yet ruled on the request.

1

statement opposing the *Bruen* decision," *May* Opp. at 1. But it is Plaintiffs' oppositions that defy the *Bruen* framework: they ignore the Supreme Court's repeated guidance that schools are sensitive places; they rely on the historically-unsupported argument that sensitive places are only those where the government provides armed security; and they confine the "more nuanced approach" that *Bruen* countenances to a historical inquiry about regulations at nuclear facilities (and nowhere else). Under Plaintiffs' approach to *Bruen*'s historical inquiry, the only places where firearms carriage may be restricted are apparently "legislative assemblies, polling places, and courthouses," *Carralero* Opp. at 9—an outcome that *Bruen* specifically disclaimed when it explained that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." 142 S. Ct. at 2133. Properly applying the *Bruen* framework, the Attorney General has justified a stay of the injunction.

1. **Playgrounds and youth centers, local parks, libraries, and museums and zoos**

Relevantly similar historical analogues exist for each of these locations. *See* Mot. 11-14; Opp. to PI at 31-36. And courts have repeatedly declined to enjoin carriage restrictions at them. *See Kipke v. Moore*, 2023 WL 6381503, at *7 (D. Md. Sept. 29, 2023) (declining to enjoin restrictions at museums); *Md. Shall Issue, Inc. v. Montgomery Cnty.*, 2023 WL 4373260, at *10-12 (D. Md. July 6, 2023)

(parks and libraries); *We The Patriots, Inc. v. Grisham*, 2023 WL 6622042, at *10 (D.N.M. Oct. 11, 2023) (playgrounds); *Koons v. Platkin*, 2023 WL 3478604, at *82 (D.N.J. May 16, 2023) (playgrounds). The *Carralero* Plaintiffs assert that the Attorney General "cites just a few restrictions" as analogues for SB 2's restrictions on local parks, libraries, museums, and zoos. Opp. at 14. That is incorrect. For local parks alone, the Attorney General supplied dozens of historical laws restricting the carriage of firearms. Young Decl., ¶¶ 34-37 & Exs. 2-40. Similarly, for libraries, museums, and zoos, the Attorney General established that numerous relevantly similar laws restricted carriage of firearms in places where people assembled for educational purposes. *See* Comp. Exs. 65, 77, 91, 103, 104, 115, 116, 138, 142, 144, 169, 195, 196. The Attorney General also established that these challenged locations are relevantly similar to "schools"—which *Bruen* confirmed have been regulated through "longstanding' laws forbidding the carrying of firearms in sensitive places." 142 S. Ct. at 2133; *see also id*. at 2162 (Kavanaugh, J., concurring) ("[N]othing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools."); *see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) (similar).

The *Carralero* Plaintiffs' response to the fact that these locations are analogous to schools is to contend that *Bruen* "did not include schools in [its] list"

of sensitive places. Opp. at 11. That is inconsistent with the explicit language in *Bruen*, 142 S. Ct. at 2133, and district courts have properly rejected such a flawed misreading of *Bruen*. *See*, *e.g.*, *Wolford v. Lopez*, 2023 WL 5043805, at *20 (D. Haw. Aug. 8, 2023) (describing *Bruen* as "recognizing [the] undisputed lawfulness of prohibitions in places such as . . . schools"); *Koons*, 2023 WL 3478604, at *85 (declining to enjoin restrictions on "youth sport events" because they "fall within the sphere of schools, where firearm bans are 'presumptively lawful'"). Plaintiffs fail to distinguish those decisions declining to enjoin restrictions on locations similar to schools, which at a minimum demonstrates a substantial question justifying a stay. *See* Mot. at 11-13 (collecting cases); *see also Antonyuk*, 2023 WL 8518003, at *2, *7 (injunctions stayed as to firearms restrictions at zoos and public parks); *Koons*, No. 23-1900, Dkt. No. 29 (same as to zoos, parks, and libraries).

Plaintiffs also advance an ahistorical theory, which was also adopted by the district court, Order at 34-35, that the sensitive places the Supreme Court has recognized are all historically places that have been "protected" by the government "with comprehensive security." *Carralero* Opp. at 10. But the notion that "sensitive places are limited to buildings with comprehensive, state-provided security is baseless." *Kipke*, 2023 WL 6381503, at *6. Indeed, "[m]any 'schools' and 'government buildings'—the paradigmatic 'sensitive places' identified in

4

*Heller* . . . —are open to the public, without any form of special security or screening." *United States v. Class*, 930 F.3d 460, 465 (D.C. Cir. 2019); *see also* Opp. to PI at 37-39 (noting the nation's legislative assemblies, which the Supreme Court has recognized as sensitive places, historically lacked security).

    **2.    Health care facilities, public transit, locations where liquor is sold for consumption on site, permitted special events and public gatherings, state parks, casinos, stadiums, amusement parks, houses of worship where the operator has not given express consent, and financial institutions**

The Attorney General submitted evidence, comprising thirteen expert declarations and a compendium of 200 laws, supporting these challenged restrictions. Opp. to PI at 10-36; *see also* Meyerhoff Decl. ISO Mot. to Stay, Ex. 5. Both the Second and Third Circuits stayed injunctions of similar restrictions pending appeals of preliminary injunctions, reflecting at least serious merits questions as to these locations. *Antonyuk*, 2023 WL 8518003, at *2, *7 (injunctions stayed as to restrictions at places of worship, buses, locations where alcohol is sold for consumption on site, and public gatherings); *Koons*, No. 23-1900, Dkt. No. 29 (same as to permitted public gatherings, state parks, locations where alcohol is sold for consumption on site, casinos, health care facilities, and entertainment facilities including stadiums). And the Second Circuit, the only federal court of appeals to address a post-*Bruen* challenge to a sensitive place designation, largely upheld the sensitive places restrictions at issue in that case

5

(*e.g.,* places where alcohol is served, theaters), after applying an analytical approach that strongly supports the Attorney General's position here (*e.g.,* noting that legislatures "have not generally legislated to their constitutional limits"). *Antonyuk*, 2023 WL 8518003, at *13, *67-70.

Plaintiffs' other contentions on the sensitive places in this category also lack merit. First, contrary to the *Carralero* Plaintiffs' assertion, Opp. at 15, the district court repeatedly relied on a flawed, blanket conclusion that all present-day sensitive places regulations are more burdensome than all historical laws (because jurisdictions today almost uniformly require permits to carry firearms). *See* Order at 21 (rejecting a historical analogue for the restriction on locations that sell liquor for consumption on site because it did not regulate "law-abiding citizens who have been vetted and trained"); *see also id*. at 17 (similar); *id*. at 25 (similar); *id*. at 30 (similar); *id*. at 33 (similar)).[2] But as the Attorney General explained, the mere existence of a permitting regime does not impose burdens that are relevantly more burdensome than historical restrictions on carriage at certain sensitive locations. Mot. at 15-17.

---

[2] The *May* Plaintiffs appear to concede that the district court employed this reasoning because they embrace it. *See May* Opp. at 9 ("weighing" California's "extensive CCW permit application process . . . in the analysis was entirely appropriate and necessary").

6

Second, while the *Carralero* Plaintiffs would effectively eliminate *Bruen*'s "more nuanced approach" because, in their view, "the potential for gun violence" has "existed since the Founding," *Carralero* Opp. at 17, the *May* Plaintiffs candidly acknowledge that the approach "may apply in the sensitive places context," *May* Opp. at 9. But they argue, without any support, that the nuanced approach cannot apply to the challenged provisions here because "nearly all the places that SB 2 impacted and that the district court enjoined existed prior to 1900." *Id*. at 10. That is simply false. The Attorney General's historical evidence established that many of these places emerged (or came to exist in modern form) only in the late 19th or early 20th century (*e.g.,* health care facilities, amusement parks, and stadiums). *See* Meyerhoff Decl., Ex. 5 (collecting Kisacky, Fissell, Winkler, Brewer, and Mancall Declarations).

Third, Plaintiffs' efforts to discount the Attorney General's historical analogues on temporal and geographic grounds lack support in *Bruen* and have been rejected as improper by other courts. Contrary to Plaintiffs' assertions, the Founding Era is not the only relevant historical era. *Compare Carralero* Opp. at 6 ("the historical analogues California presents must stem from the Founding era") *with United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023) (relying on laws enacted "throughout the 1800s"). Similarly, Plaintiffs argue that territorial laws should be afforded "virtually no weight" under *Bruen*. *May* Opp. at 16; *see also*

7

*Carralero* Opp. at 9 ("little weight"). But the numerous territorial laws identified in support of SB 2 fit squarely "within the line of the English, Founding-era, and Reconstruction state statues cited by" the Attorney General and thus "are exactly the opposite of the 'few late-19th-century outlier jurisdictions' offered and discounted in *Bruen*." *Antonyuk*, 2023 WL 8518003, at *62.

### 3. Parking lots of sensitive places

As explained in the Motion, the district court's injunction would appear to allow the carriage of firearms in the parking lots of numerous locations that *neither set of Plaintiffs even challenged*, including police stations, courthouses, jails, and nuclear facilities. Mot. at 19. Now, neither set of Plaintiffs appears to endorse the scope of the district court's injunction. *See Carralero* Opp. at 18 (limiting defense of injunction to "parking lots of the 'sensitive' places the *Carralero* Plaintiffs challenged"); *May* Opp. at 13 ("To be sure, some curtilage might be found to be sensitive."). And while the *May* Plaintiffs nonetheless argue that the district court's injunction was proper because "parking lots restricted by SB 2" are too "numerous and ubiquitous," *May* Opp. at 13, they do not refute the body of precedent holding that firearms may be limited in the parking lots of sensitive places, *see Carralero* Opp. at 18 (acknowledging that three circuit court opinions all affirmed parking lot restrictions).

8

### 4. Private property open to the public

The Attorney General has also raised serious questions on the merits as to the private commercial property provision. As the Attorney General established below and in the Motion, Plaintiffs' challenge to this provision will ultimately fail because the "default rule" for private property does not implicate the plain text of the Second Amendment—a point that the district court and Plaintiffs do not meaningfully discuss. Mot. at 20 (citing Opp. to PI at 39-43). And while both sets of Plaintiffs cite cases enjoining similar provisions—authority the Attorney General acknowledged in his Motion—the party seeking a stay is not required to show that "it is more likely than not that they will win on the merits." *See Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (a "more stringent requirement . . . would have the court attempting to predict with accuracy the resolution of often-thorny legal issues without adequate briefing and argument"). Rather, it is enough that there is a "substantial case" on the merits, *Lair*, 697 F.3d at 1204, a standard that the Attorney General meets here.

## II. THE EQUITABLE FACTORS WEIGH IN FAVOR OF STAY

As the *Carralero* Plaintiffs acknowledge, a stay pending appeal suspends "judicial alteration of the status quo." *Carralero* Opp. at 4 (quoting *Nken v. Holder*, 556 U.S. 418, 429 (2009)). In this case, the "judicial alteration" was the

9

district court's injunction prohibiting enforcement of numerous provisions of SB 2 that are set to take effect on January 1.

Moreover, the State "suffers . . . irreparable injury" when barred "from effectuating statutes enacted by representatives of its people," and that is especially so when public safety is at stake. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (internal quotation marks omitted). The *Carralero* Plaintiffs assert that public safety concerns are irrelevant to the Second Amendment merits analysis. *Carralero* Opp. at 21. But the Attorney General identified these public safety concerns as an *equitable* consideration that weighs in favor of a stay—not as a consideration on the merits of the Second Amendment claim. *See* Mot. at 20-21. Public safety remains an important consideration when the Court weighs equitable factors in the context of a stay motion. *See Duncan v. Bonta*, 83 F.4th 803, 806 (9th Cir. 2023) (en banc).

Moreover, as Plaintiffs acknowledge, the Court is likely to "resolve this preliminary injunction appeal with alacrity." *Carralero* Opp. at 23. And any temporary restriction on the places where Plaintiffs may carry is more modest than Plaintiffs suggest. Contrary to Plaintiffs' assertions, the Attorney General has never described SB 2 to prohibit carriage everywhere in California "except for on public streets and sidewalks." *Carralero* Opp. at 1. Rather, SB 2 delimits particular locations that are sensitive. Concealed carry licensees will still be able

to carry, among other places, at private businesses open to the public that allow firearms on their property as permitted by SB 2. *Cf. Antonyuk*, 2023 WL 8518003, at *82 (noting that the vast majority of land in New York state is privately held). In addition, SB 2 contains exceptions for licensees who wish to store firearms in their vehicles while visiting sensitive places, *see* Cal. Penal Code § 26230(c), and those who travel through or near a sensitive place, *see id.*, § 26230(a)(10), (e).

Plaintiffs argue that even this limited burden cannot be countenanced because "Americans with CCW permits are the most law-abiding demographic of which Plaintiffs are aware." *May* Opp. at 18; *see also Carralero* Opp. at 21 (similar). But concealed carry permit holders have been responsible for thousands of deaths nationwide over the past decade and a half. *See More Than 2,200 Non-Self Defense Deaths Involving Concealed Carry Killers Since 2007, Latest Violence Policy Center Research Shows*, Violence Pol'y Ctr. (Apr. 21, 2022), https://perma.cc/MXW4-AWYD. Moreover, SB 2's purpose is not only to reduce the number of people killed, injured, or traumatized by gun violence, but also to ensure that residents can exercise other constitutional rights without fear or intimidation. *See* SB 2 (2023-2024 Reg. Sess.), § 1(j) (citing research showing that carriage at places of worship and protests discourages people from "attending protests" and "peacefully worshiping").

### III. AT A MINIMUM, THIS COURT SHOULD ISSUE A PARTIAL STAY.

If the Court decides not to stay the injunction in its entirety, it should grant a partial stay of the injunction. For instance, the Court may elect to stay the injunction except as to the private property provision, similar to the Third Circuit's stay order in *Koons*. *See Carralero* Opp. 6 n. 1 (acknowledging Third Circuit's stay). At an absolute minimum, the Court should issue a stay as to playgrounds, local parks, libraries, museums and zoos, the parking lots of those places, and the parking lots of sensitive places that Plaintiffs did not challenge below—all places as to which the Attorney General has an exceptionally high chance of success on the merits. *See* Mot. at 22-23.

## CONCLUSION

The Court should stay the district court's preliminary injunction pending appeal.

Dated: December 29, 2023

Respectfully submitted,

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
MARK R. BECKINGTON
*Supervising Deputy Attorneys General*

s/ Robert L. Meyerhoff
ROBERT L. MEYERHOFF
*Deputy Attorney General*
*Attorneys for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 2,766 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This reply complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: December 29, 2023                                   s/ Robert L. Meyerhoff