No. 23-4354

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARCO ANTONIO CARRALERO, ET AL.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF CALIFORNIA,
*Defendant-Appellant*.

**On Appeal from the United States District Court
for the Central District of California**
No. 8:23-cv-01798-CJC-ADSx
The Honorable Cormac J. Carney, Judge

**APPELLEES' SUPPLEMENTAL BRIEF**

Bradley A. Benbrook
Stephen M. Duvernay
BENBROOK LAW GROUP, PC
701 University Avenue, Suite 106
Sacramento, CA 95825
(916) 447-4900
brad@benbrooklawgroup.com

David H. Thompson
Peter A. Patterson
Kate Hardiman
COOPER & KIRK, PLLC
1523 New Hampshire Ave NW
Washington, DC 20036
dthompson@cooperkirk.com

July 12, 2024

## TABLE OF CONTENTS

                                                                                                                                                               **Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................1

CONCLUSION ..............................................................................................................7

## TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023)..............................................................................4

*Antonyuk v. Chiumento*, No. 23-910,
    2024 WL 3259671 (U.S. July 2, 2024) (Mem.) ...............................................4

*Baird v. Bonta*,
    81 F.4th 1036 (9th Cir. 2023)...........................................................................2

*Erlinger v. United States*, No. 23-370,
    2024 WL 3074427 (U.S. June 21, 2024).........................................................2

*O'Connor v. Donaldson*,
    422 U.S. 563 (1975).........................................................................................4

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022)........................................................................2, 4, 5, 6, 8

*State v. Huntly*,
    25 N.C. 418 (1843) .........................................................................................4

*United States v. Gaudin*,
    15 U.S. 506 (1995)...........................................................................................3

*United States v. Rahimi*, No. 22-915,
    2024 WL 3074728 (U.S. June 21, 2024)............................1, 2, 3, 4, 5, 6, 7, 8

**Code**

18 U.S.C. § 922(g)(8)................................................................................................. 3

## INTRODUCTION

Plaintiffs respectfully submit this supplemental brief in response to this Court's order entered June 21, 2024, on the effect of the Supreme Court's decision in *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024).

In *United States v. Rahimi*, the Supreme Court evaluated whether an individual subject to a domestic violence restraining order for posing a credible threat to his intimate partner could be disarmed consistent with the Second Amendment. 2024 WL 3074728, at *5. The Court "conclude[d] only this: An individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *Id.* at **7, 11.

## ARGUMENT

While *Rahimi*'s narrow holding does not apply to this case because all Plaintiffs are law-abiding, *see* Pls.-Appellees' Resp. Br. at 1 (Feb. 16, 2024) ("Pls.' Br."), the Court's reasoning strengthens Plaintiffs' arguments in several respects.

*First*, *Rahimi* reaffirmed *Bruen*'s text-informed-by-history test. In so doing, the Court emphasized a few points that Plaintiffs have advanced throughout this litigation. One is that the Founding era is critical for assessing analogues. *See* Pls.' Br. at 12–15. While the Court again found it unnecessary to decide whether courts should primarily rely on Founding- or Reconstruction-era analogues in assessing the

1

prevailing understanding of an individual right, *Rahimi*, 2024 WL 3074728, at \*6 n.1, the Court focused its analysis on the Founding era. Indeed, it repeatedly suggested that a historical tradition of regulation must be rooted in that time period. For example, the Court located a tradition "[s]ince the Founding" that supported the narrow limit on the right acknowledged in *Rahimi*. *See id.* at \*\*5–6; *see also id.* at \*6 (calling on courts to assess whether a modern law is "'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance *struck by the founding generation* to modern circumstances.'" (quoting *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 29 & n.7 (2022)) (emphasis added)); *see also id.* at \*7 (referencing state constitutions around the time of the Founding).

That tradition included widespread Founding-era surety practices that were "[w]ell entrenched in the common law" and prohibitions on going armed offensively, which were also incorporated into the common law at the Founding. *Id.* at \*\*7–9. As such, the Court also reaffirmed *Bruen*'s requirement that relevantly similar analogues be widespread, because both the surety laws and prohibitions on going armed offensively were part of the generally applicable common law at the time.[1]

---

[1] In a decision decided on the same day as *Rahimi*, the Supreme Court rejected the argument that procedures employed by a few states "in the early 19th century" could inform the original meaning of the Fifth and Sixth Amendments. *Erlinger v. United States*, No. 23-370, 2024 WL 3074427, at \*12 (U.S. June 21, 2024); *see also id.* at \*13 (procedures "in less than a handful of states" is not "the kind of 'uniform postratification practice' that can sometimes 'shed light upon the meaning' of the Constitution.'"). Rather, the Court explained that procedures "followed by a few

By relying on generally applicable laws as the basis for a sufficient "historical tradition of firearm regulation" to uphold 18 U.S.C. § 922(g)(8), *Rahimi* also reaffirmed this Court's decision in *Baird v. Bonta*, which noted that the government must offer "well-established and representative . . . analogue[s]" to justify the challenged restrictions, defined as those that are "widely in effect." 81 F.4th 1036, 1042–43 (9th Cir. 2023).

In other words, *Rahimi* underscores that it is insufficient to identify a smattering of restrictions, much less a few restrictions that postdate the Fourteenth Amendment. Rather, the State must *connect* its analogues to an underlying tradition of regulation stretching to the Founding. For example, California has offered a handful of laws prohibiting hunting on the lands of others as analogues to support SB 2's no-carry default restriction. Pls.' Br. at 19, 33–36. Those laws are connected to the underlying tradition that individuals were not allowed to hunt on the enclosed land of others—a very different tradition than broad, generally-applicable bans on peaceable carry for self-defense at privately-owned commercial establishments open to the public. *See id.*

The problem for California is that while it leans heavily on four outlier laws broadly banning carry in places of public assembly enacted by Southern states after

---

States hardly represents 'convincing' proof[.]" *Id.* at *12 (quoting *United States v. Gaudin*, 515 U.S. 506, 515 (1995)).

3

the Fourteenth Amendment's ratification, Pls.' Br. at 48 (discussing the State's 1870 Texas, 1874 Missouri, 1869 Tennessee, and 1870 Georgia laws), it does not connect these laws to any earlier tradition. As the Second Circuit recognized in *Antonyuk*, the only tradition that those laws plausibly connect to is the going-armed laws. *See, e.g., Antonyuk v. Chiumento*, 89 F.4th 271, 355–56 (2d Cir. 2023).[2] But such laws are not valid analogues for prohibiting all *law-abiding* citizens from carrying in public for several reasons. *See* Pls.' Br. at 47– 48. Chief among them is the fact that these laws confirmed and echoed the common law "affray" tradition prohibiting individuals from going armed *with evil intent to terrorize others*. *See id.* at 47; *see also Bruen*, 597 U.S. at 40; *Rahimi*, 2024 WL 3074728, at *9 (recognizing that the conduct these laws criminalized was done to terrify others and "le[d] almost necessarily to actual violence" (quoting *State v. Huntly*, 25 N.C. 418, 421–22 (1843) (per curiam)). As a leading case cited by *Rahimi* emphasized, under this tradition "the carrying of a gun *per se* constitutes no offence . . . . It is the wicked purpose— and the mischievous result—which essentially constitute the crime." *Huntly*, 25 N.C. at 422–23. Because Plaintiffs here are law-abiding and seek to carry peaceably, the going-armed laws cannot serve as viable analogues or the foundation of any

---

[2] The Supreme Court recently granted, vacated, and remanded the pending petition for certiorari in *Antonyuk* for reconsideration in light of *United States v. Rahimi*, depriving the Second Circuit's decision of precedential effect. *See* No. 23-910, 2024 WL 3259671 (U.S. July 2, 2024) (Mem.); *O'Connor v. Donaldson*, 422 U.S. 563, 577 n.12 (1975).

historical tradition. In stark contrast, such laws *were* valid analogues in *Rahimi* because the Court recognized that Mr. Rahimi "poses a clear threat of physical violence to another." *Rahimi*, 2024 WL 3074728, at *9; *see also id*. at *4 (underlying restraining order "included a finding that Rahimi had committed 'family violence'" and that such "violence was 'likely to occur again'").

*Second*, again calling back to *Bruen*, *Rahimi* confirmed that the Government need not pinpoint a "historical twin" from the Founding era to support its restrictions. *See id.* at *6 (explaining that *Bruen* was "not meant to suggest a law trapped in amber"); *Bruen*, 597 U.S. at 26–31. That said, *Rahimi* emphasized that "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition." *Rahimi*, 2024 WL 3074728, at *6. And the Court elucidated the overarching principle—that individuals found to be threatening and violent to others can be temporarily disarmed—by examining relevantly-similar analogues (the surety and going-armed laws, which were both generally applicable during the Founding era). *See id.* at **7–9. In so doing, the Court also reiterated *Bruen*'s teaching that "[w]hy and how the regulation burdens the right are central to th[e] [analogical] inquiry." *Id.* at *6.

Here, Plaintiffs have offered two theories of the principles underpinning restrictions on carry in "sensitive" places during the Colonial and Founding eras. First, laws from those time periods indicate that firearms can be banned in locations

5

that the government comprehensively secures, as illustrated by the Founding era laws barring carry in polling places, legislatures, and courthouses, as well as the broader affray tradition. *See* Pls.' Br. at 20–24; *see also Bruen*, 597 U.S. at 30. Second, laws from those time periods indicate that firearms can be restricted for those over whom the state is exercising *in loco parentis* or similar authority, as illustrated by restrictions on the possession of firearms by students. *See* Pls.' Br. at 26–27 (collecting authorities).

California has offered competing principles: namely that "sensitive" places are (1) anywhere where governmental activities or constitutional rights are exercised, (2) anywhere that is crowded, and (3) anywhere where vulnerable people gather. However, California does not ground these principles in *any* tradition of regulation, as Plaintiffs explain. *See id.* at 24–29. Indeed, *Bruen* establishes that no such tradition recognizes these principles; if it did, the state could ban carry in virtually every public place, thereby nullifying *Bruen*'s recognition of "the general right to publicly carry arms for self-defense" and ignoring its instruction that places are not sensitive simply because they are crowded. *See Bruen*, 597 U.S. at 31. Finally, California's principles flatly contradict this Nation's tradition, dating to the Colonial and Founding eras, of permitting carry in all manner of places where people gathered. *See* Pls.' Br. at 28–29. In places that are crowded, that contain vulnerable people, and that host important constitutional activities, to the extent the government

6

itself is not providing comprehensive security, history demonstrates that the solution is to ensure law-abiding individuals in those places are *armed*, not disarmed. *See id.* In short, only Plaintiffs have identified principles deeply rooted in Colonial- and Founding-era tradition that allow restricting firearms in specific locations, none of which are challenged in this case.

Even if Plaintiffs had situated their analogues in a tradition, the laws and ordinances they present are not similar in "how and why" they burden Second Amendment rights. *Rahimi*, 2024 WL 3074728, at *6. For example, the laws that California offers to support the no-carry default were enacted only to restrict hunting on the lands of others and did not encompass businesses open to the public. *See* Pls.' Br. at 33–35. Similarly, the analogues that the State offers to support its carry restrictions in places where alcohol is served differ in how they burden Second Amendment rights because they applied only to narrow groups of people—militiamen or the intoxicated. *See id.* at 45, 55, 56. The same mismatch between "how and why" inheres for California's other analogues, *see, e.g.*, *id.* at 48, and the State has failed to meet its burden under *Bruen* and *Rahimi*.

*Third*, while California emphasizes the breadth of its expert evidence in this case, *Rahimi* underscores that such evidence is unnecessary. For starters, the Court did not cite or discuss any expert evidence. Additionally, the Court restated *Bruen*'s teaching that the task of analogical reasoning "[is] a commonplace task for any

7

lawyer or judge." *Rahimi*, 2024 WL 3074728, at *6 (quoting *Bruen* 597 U.S. at 28). *Rahimi* thus makes crystal clear that this Court need not consider *any* expert evidence to resolve this case. On the contrary, this Court should review and consider the plain text of the statutes that California cites to assess whether they are constitutionally relevant analogues for the challenged locations.

## CONCLUSION

For all these reasons, *Rahimi* re-affirms *Bruen* and supports Plaintiffs' arguments that SB 2's broad bans on public carry are not consistent with the nation's historical tradition of firearms regulation and are therefore unconstitutional.

Dated: July 12, 2024

Bradley A. Benbrook
Stephen M. Duvernay
Benbrook Law Group, PC
701 University Avenue, Suite 106
Sacramento, CA 95825
(916) 447-4900
brad@benbrooklawgroup.com

Respectfully submitted,

/s/David H. Thompson
David H. Thompson
Peter A. Patterson
Kate Hardiman
Cooper & Kirk, PLLC
1523 New Hampshire Ave NW
Washington, DC 20036
(202) 220-9600
dthompson@cooperkirk.com

*Attorneys for Plaintiffs-Appellees*

8

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** No. 23-4354

I am the attorney or self-represented party.

**This brief contains** 1,871 **words, including** 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

⦿ complies with the length limit designated by court order dated 06/21/2024.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/David H. Thompson  **Date** 07/12/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

Form 8  Rev. 12/01/22

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system, which will transmit the foregoing document via email to all counsel of record.

Dated: July 12, 2024

/s/David H. Thompson
David H. Thompson
*Counsel for Plaintiffs-Appellees*