Case Nos. 23-4354 and 23-4356

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

MARCO ANTONIO CARRALERO, ET AL.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,
*Defendant-Appellant*.

———————————

**On Appeal from the United States District Court
for the Central District of California**
No. 8:23-cv-01798-MRA-ADSx
The Honorable Mónica Ramírez Almadani

———————————

## RESPONSE TO PETITIONS FOR REHEARING EN BANC

———————————

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
R. MATTHEW WISE
MARK R. BECKINGTON
*Supervising Deputy*
  *Attorneys General*

CHRISTOPHER D. HU
*Deputy Solicitor General*
ROBERT L. MEYERHOFF
TODD GRABARSKY
JANE REILLEY
LISA PLANK
CAROLYN DOWNS
*Deputy Attorneys General*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3917
Christopher.Hu@doj.ca.gov
*Attorneys for Defendant and Appellant*

October 29, 2024

*(additional caption on next page)*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

RENO MAY, ET AL.,

*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA,

*Defendant-Appellant*.

————————————

## On Appeal from the United States District Court
## for the Central District of California
No. 8:23-cv-01696 MRA-ADSx
The Honorable Mónica Ramírez Almadani

————————————

# TABLE OF CONTENTS

**Page**

Introduction ....................................................................................................1

Statement .......................................................................................................2

Argument .......................................................................................................5

I.   The challenged portions of the panel's decision are consistent with
     Supreme Court precedent ....................................................................5

II.  The asserted circuit conflict does not warrant further review .......................10

III. Rehearing is not warranted to relitigate specific sensitive places
     provisions ............................................................................................13

Conclusion ....................................................................................................16

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Antonyuk v. James*
    2023 WL 11963034 (2d Cir. Oct. 24, 2024) ...................................10, 11, 12, 13

*District of Columbia v. Heller*
    554 U.S. 570 (2008)..........................................................................................9

*Moody v. NetChoice, LLC*
    144 S. Ct. 2383 (2024).....................................................................................13

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
    597 U.S. 1 (2022)....................................................................................*passim*

*United States v. Rahimi*
    144 S. Ct. 1889 (2024)............................................................................*passim*

STATUTES

Senate Bill 2 (2023-2024 Reg. Sess.), § 1(a).........................................................2

California Penal Code
    § 26230(a)(1) ...................................................................................................2
    § 26230(a)(2) ...................................................................................................2
    § 26230(a)(9) ...................................................................................................2
    § 26230(a)(12) ...........................................................................................2, 14
    § 26230(a)(13) ...........................................................................................2, 14
    § 26230(a)(14) .................................................................................................2
    § 26230(a)(25) .................................................................................................2
    § 26230(a)(26) .................................................................................................3
    § 26230(c) ........................................................................................................2

REGULATIONS

California Code of Regulations, Title 14
    § 4753.............................................................................................................14
    § 4754.............................................................................................................14

## TABLE OF AUTHORITIES
### (continued)

**Page**

CONSTITUTIONAL PROVISIONS

Second Amendment ..........................................................................................*passim*

COURT RULES

Federal Rules of Appellate Procedure
    Rule 35(a)...............................................................................................................5
    Rule 40 ..................................................................................................................5

## INTRODUCTION

These appeals concern plaintiffs' facial challenge to certain provisions of a California law that prohibit firearms in sensitive places such as playgrounds, libraries, and parks. The panel addressed each of the challenged provisions in a unanimous, 84-page opinion. It affirmed the district court's decision to preliminarily enjoin some of California's sensitive places restrictions. But it reversed the preliminary injunction as to other provisions, holding that those provisions are likely constitutional because they are consistent with the principles underpinning the Nation's historical tradition of firearm regulation. Throughout its decision, the panel noted the "preliminary stage" of the litigation and emphasized that the opinion "express[es] no view on the constitutional analysis once the parties have had a full opportunity to present and brief the issue[s]." Opn. 71, 72; *see also, e.g.*, Opn. 44-45 n.4, 77.

Plaintiffs identify no persuasive basis to rehear the panel's conclusions. The panel's emphasis on the limited and preliminary nature of its analysis at this early stage of the proceedings is reason alone to deny the petitions. Rehearing is also unwarranted because the challenged portions of the decision are consistent with the Supreme Court's Second Amendment precedent. The panel applied the historical approach required under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 144 S. Ct. 1889 (2024), and it properly

1

rejected plaintiffs' erroneous theories about how that historical analysis should be conducted.  The purported inter-circuit conflict raised by plaintiffs does not warrant further review.  And plaintiffs' other objections to the panel's analysis lack merit and do not meet the standard for en banc review.

## STATEMENT

California enacted Senate Bill 2 to advance its "compelling interests in protecting both individual rights and public safety."  SB 2 (2023-2024 Reg. Sess.), § 1(a).  Among other provisions, SB 2 prohibits the concealed carry of firearms in certain locations identified as sensitive places.  *See* Opn. 19-26.  Many locations designated as sensitive are not challenged here, such as schools, preschools, higher education facilities, and polling places.  *See* Opn. 20-21, 23, 25 (quoting Cal. Penal Code § 26230(a)(1), (2), (14), and (25)).  The provisions at issue in this proceeding include, for example, prohibitions on carrying firearms at parks, on property controlled by California's Department of Parks and Recreation and Department of Fish and Wildlife, and in establishments that sell liquor for consumption on site. Opn. 22-23 (quoting Cal. Penal Code § 26230(a)(9), (12), and (13); *see also* Opn. 39.  SB 2 features various exceptions that facilitate the right of concealed-carry licensees to carry in public, including a provision that allows them to store firearms in their vehicles when they park at sensitive places.  Cal. Penal Code § 26230(c); *see* Opn. 57.  SB 2 was scheduled to take effect on January 1, 2024.

Before the law went into effect, plaintiffs filed separate actions asserting Second Amendment challenges to many of the law's sensitive places restrictions and moved to preliminarily enjoin enforcement of those provisions. The district court issued a preliminary injunction that blocked enforcement of all the sensitive places provisions that plaintiffs challenged. *See* Opn. 26-27.

The panel affirmed the preliminary injunction in part and reversed in part, "conclud[ing] that some—but not all—of the places specified by th[e] law[] likely fall within the national tradition of prohibiting firearms at sensitive places." Opn. 13.[1] The panel affirmed the injunction as to hospitals and healthcare facilities, public transit, gatherings that require a permit, places of worship, and banks, as well as the parking lots of those locations. Opn. 82-83. It also affirmed the injunction as to California's default rule for private property open to the public. Opn. 83. That rule prohibits concealed carry on such property unless the operator of the establishment posts a sign indicating that carrying firearms is allowed. *See* Cal. Penal Code § 26230(a)(26). The panel concluded that plaintiffs are likely to

---

[1] As part of the same opinion, the panel decided a separate appeal in *Wolford v. Lopez*, No. 23-16164, which concerns Hawaiʻi's law restricting firearms in sensitive places. The plaintiffs in that case have separately petitioned for rehearing or rehearing en banc. C.A. No. 23-16164, Dkt. 105.

succeed in their Second Amendment challenges to all those provisions.  Opn. 61-81.[2]

The panel reached a different conclusion with respect to several other challenged provisions:  those that restrict firearms in parks and similar areas; playgrounds and youth centers; bars and restaurants that serve alcohol; places of amusement (casinos, stadiums, amusement parks, zoos, museums, and libraries); and parking areas connected to sensitive places.  Opn. 40-57, 83.  The panel reasoned that those provisions "fall within the national historical tradition of prohibiting firearms at sensitive places," *e.g.*, Opn. 49, and are thus likely to be constitutional.

Throughout the decision, the panel emphasized the preliminary nature of its analysis.  For example, the panel noted the "preliminary stage" of the litigation, Opn. 44-45 n.4, 71, 77 ("at least for the purpose of preliminary relief"); explicitly limited its analysis to "the current record," Opn. 77; and noted that its ruling "is merely a prediction of Plaintiffs' likelihood of success," Opn. 72.  In other portions of the decision, the panel expressly limited its analysis of historical laws to what it believed those laws "likely" meant.  Opn. 66.  The panel underscored that it did not

---

[2] The Attorney General respectfully disagrees with the panel's decision to affirm parts of the preliminary injunction and intends to defend the constitutionality of California's sensitive places restrictions on remand.

express any "view on the constitutional analysis once the parties have had a full opportunity to present and brief the issue" and explained that "[f]urther Supreme Court and circuit-court guidance" could "affect the ultimate resolution" of the issues.  Opn. 72.  It also indicated that the parties might later raise arguments in the district court that were not asserted in these appeals.  *See* Opn. 60-61.

## ARGUMENT

Plaintiffs identify no persuasive reason for rehearing or rehearing en banc. The panel repeatedly emphasized the limited and preliminary scope of its ruling. And the challenged portions of the panel's decision are consistent with the Supreme Court's Second Amendment precedent; do not create the sort of circuit conflict that would warrant further review; and do not otherwise meet the standards for rehearing.  Fed. R. App. P. 35(a), 40.

## I.   THE CHALLENGED PORTIONS OF THE PANEL'S DECISION ARE CONSISTENT WITH SUPREME COURT PRECEDENT

Plaintiffs contend that the panel decision "is contrary to *Bruen* and *Rahimi.*" *Carralero* Pet. 5; *see May* Pet. 1-2, 12-15.  That is incorrect.

The Supreme Court has instructed that in cases like this one, "the government bears the burden to 'justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.'"  *Carralero* Pet. 5 (quoting *Bruen*, 597 U.S. at 24).  The "appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our

regulatory tradition." *Rahimi*, 144 S. Ct. at 1898. The challenged portions of the panel's decision adhere to those instructions.

The panel began by examining the Supreme Court's recent Second Amendment decisions—with emphasis on the high court's discussion of sensitive places in *Bruen* and other cases. Opn. 28-37. Based on that precedent, the panel recognized that "[o]ur Nation has a clear historical tradition of banning firearms at sensitive places." Opn. 36. The panel then laid out its approach for evaluating whether modern sensitive places restrictions fall within that historical tradition. "For places that have existed since the Founding," the government must "identify historical regulations similar in number and timeframe to the regulations that the Supreme Court cited as justification for designating other places as sensitive." Opn. 37. "For places that are newer," the government "must point to regulations that are analogous to the regulations cited by the Court, taking into account that it is illogical to expect a government to regulate a place before it existed in its modern form." *Id.* "For both types of places, historical regulations need not be a close match to the challenged law; they need only evince a principle underpinning our Nation's historical tradition of regulating firearms in places relevantly similar to those covered by the challenged law." *Id.*

The panel applied that historical approach to each of the challenged provisions, concluding that some likely fall within the national tradition of

6

regulation and some likely do not.  With regard to parks, for instance, the panel

credited historical evidence that "[a]s soon as green spaces began to take the shape

of a modern park, in the middle of the 19th century, municipalities and other

governments imposed bans on carrying firearms into the parks."  Opn. 40-41.  In

light of that history, including the fact that "nothing in the record suggests that

courts considered the laws unconstitutional," the panel concluded that laws

banning firearms in parks are likely "analogous to other historical laws establishing

a national tradition of banning firearms at sensitive places."  Opn. 43.  The panel

conducted a similar analysis in its preliminary assessment of restrictions at

playgrounds and youth centers, *see* Opn. 46 (akin to restrictions "at schools and

parks"); bars and restaurants that serve liquor, *see* Opn. 48 ("governments have

regulated in order to mitigate the dangers of mixing alcohol and firearms" as well

as certain "crowded places," and there are analogues "directly on point"); and

places of amusement, *see* Opn. 54 (they are likely justified "as part of a tradition of

banning firearms at discrete, densely crowded physical spaces wherein people

assemble for amusement" (internal quotation marks omitted)).

Plaintiffs criticize the panel for examining "whether the *places* at which

firearms have been banned historically are 'relevantly similar' to the places where

California has banned them today."  *Carralero* Pet. 8.  But the panel's approach is

consistent with Supreme Court precedent.  The Supreme Court has instructed that

"courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Bruen*, 597 U.S. at 30. The panel applied that approach. It concluded, for example, that modern-day casinos, stadiums, and zoos are likely analogous to historical "places of amusement and social gathering" where firearms were restricted. Opn. 53. And in a portion of the decision that plaintiffs do not challenge, it concluded that hospitals are likely not sufficiently analogous to schools to justify a ban on firearms in hospitals. Opn. 76-78.[3]

Plaintiffs also object that the panel failed to adopt a "unifying theory . . . of what could make a place sensitive." *Carralero* Pet. 7. But the Supreme Court does not require a "unifying theory" to conduct a historical analysis. Indeed, the high court has repeatedly declined to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," *Rahimi*, 144 S. Ct. at 1903 (internal quotation marks omitted), instead focusing its analysis on the specific disputes before it.

---

[3] The panel did not adopt the Attorney General's arguments as to certain principles underlying historical regulations on sensitive places. *See* OB 13-17. The Attorney General preserves those arguments for proceedings on remand in the district court.

Plaintiffs' real complaint appears to be that the panel declined to adopt *their* "unifying theory" of sensitive places. They contend that firearms may be prohibited only in places that feature "comprehensive, government-provided security," where armed guards would stand "at the ready to protect citizens." *Carralero* Pet. 9 (internal quotation marks omitted). The panel correctly rejected this theory as one that "flatly contradicts *Bruen*." Opn. 38. As the panel explained, "[m]any schools and polling places have few security measures—now or in the past—yet the Supreme Court listed those places as conclusively sensitive." *Id.*; *see Bruen*, 597 U.S. at 30 (discussing "'longstanding' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings'" (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). The *Carralero* plaintiffs entirely ignore the Supreme Court's discussion of schools as sensitive places in advancing their "comprehensive security" theory, *Carralero* Pet. 9-10, while the *May* plaintiffs dismiss it as "dicta," *May* Pet. 13. Plaintiffs' arguments cannot be squared with the Supreme Court's repeated recognition that schools are sensitive places.[4]

---

[4] The panel observed that further "circuit-court guidance" could "affect the ultimate resolution" of these cases. Opn. 72. The Attorney General notes that en banc proceedings are pending in *Duncan v. Bonta*, No. 23-55805, *Teter v. Lopez*, No. 20-15948, and *United States v. Duarte*, No. 22-50048. En banc decisions in one or more of those cases may provide additional relevant guidance on how courts should conduct the Second Amendment analysis.

## II.  THE ASSERTED CIRCUIT CONFLICT DOES NOT WARRANT FURTHER REVIEW

Plaintiffs also argue that the panel decision creates a circuit conflict with respect to default rules for private property that is open to the public.  *Carralero* Pet. 10-12; *May* Pet. 3-8.  But the panel ruled for *plaintiffs* on that issue:  it held that they are likely to succeed in their Second Amendment challenge to California's default rule for private property open to the public and affirmed the preliminary injunction barring enforcement of that provision.  Opn. 82-83. Plaintiffs agree that they "prevail[ed]" on this issue.  *May* Pet. 4.  The panel also qualified its analysis as a preliminary one—subject to change "once the parties have had a full opportunity to present and brief the issue."  Opn. 72; *see id.* (this qualification applies "in all instances" addressed in the decision).  The present circumstances of this case and the qualified nature of the decision make it a poor candidate for further review.

Plaintiffs nonetheless assert that rehearing is warranted because the panel's preliminary *reasoning* with respect to the private property default rule "creates a split of authority with the Second Circuit."  *May* Pet. 4; *see Carralero* Pet. 10-12. The Second Circuit recently reissued a decision in *Antonyuk v. James*, 2023 WL 11963034 (2d Cir. Oct. 24, 2024).  Among other things, that decision affirmed a preliminary injunction blocking enforcement of New York's default rule for private property open to the public.  *Id.* at *79.  That disposition is consistent with

10

the panel's disposition as to California's default rule, even if the analytical path taken by the two courts differed. The Second Circuit preliminarily concluded that historical analogues likely do not support a "default presumption against carriage on private property *open* to the public." *Antonyuk*, 2023 WL 11963034, at *77. The panel decision here preliminarily concluded that "the Nation has an established tradition of arranging the default rules that apply specifically to the carrying of firearms onto private property," including private property that is open to the public. Opn. 67. Like the panel here, however, the Second Circuit "emphasize[d]" that it was "reviewing facial challenges to these provisions at a very early stage of this litigation"—meaning that its decision did not "determine the ultimate constitutionality" of the challenged provisions, "which await further briefing, discovery, and historical analysis." *Antonyuk,* 2023 WL 11963034, at *79 n.126; *see also* Opn. 44-45 n.4, 71-72, 77.[5]

What is more, plaintiffs' criticism of the panel's reasoning is unpersuasive. They assert that the panel "focused on just *two* laws" in supporting a tradition of governments arranging default rules for private property. *May* Pet. 5. In fact, the panel relied on several historical laws, which it divided into "two sets." Opn. 65.

---

[5] As plaintiffs acknowledge, several district courts have enjoined private property default rules. *See Carralero* Pet. 10-11. But those district court orders are currently on appeal, assuring further percolation of the issues while the district court in these cases considers the issue on the merits.

It understood one set as "prohibit[ing] the carry of firearms onto subsets of private land, such as plantations or enclosed lands"; the other set banned "the carrying of firearms onto *any* private property without the owner's consent." *Id.* Considered "[c]ollectively," these laws "establish[ed] that colonies and States freely arranged the relevant default rules" for firearms on private property; and none of those laws was "viewed as controversial or constitutionally questionable." Opn. 66, 67. The panel concluded that two of the laws were especially relevant because they "are historical 'dead ringers'" that generally "prohibited the carry of firearms on private property without consent." Opn. 67. Of course, the government need not identify "a dead ringer" to support a modern regulation. *Bruen*, 597 U.S. at 30. But when there *are* dead ringers, which are consistent with the other relevant historical analogues, that is surely sufficient to satisfy the Second Amendment.

Plaintiffs dispute the panel's preliminary evaluation of the historical evidence, including by arguing that particular historical laws were limited to poaching. *See Carralero* Pet. 11; *May* Pet. 6; *cf. Antonyuk,* 2023 WL 11963034, at *77-78. Those arguments are not correct and are not a basis for rehearing en banc. For example, the panel explained why New Jersey's 1771 law was not limited to poaching: the provisions of that law intended to "preserve game" are separate from the part of the law that generally prohibited carrying firearms onto private property without the owner's permission. Opn. 66; *see* 4-ER-613. In any event,

12

the panel decision here and the Second Circuit decision both recognized that further development of the record might affect their ultimate decision on this and other issues. *See Antonyuk,* 2023 WL 11963034, at *77-79 nn.122-123, 126. Given the preliminary posture of both cases and the possibility that both courts might ultimately reach the same historical conclusion following further proceedings on remand, any tension between the two decisions is not a persuasive reason for rehearing at this juncture.

## III. REHEARING IS NOT WARRANTED TO RELITIGATE SPECIFIC SENSITIVE PLACES PROVISIONS

Plaintiffs also object to the panel's preliminary conclusions with respect to particular sensitive places. *May* Pet. 8-13; *Carralero* Pet. 8-9. For example, they contend that the panel erred in concluding that parks may be deemed sensitive places. *May* Pet. 2, 10-11; *Carralero* Pet. 8-9. But plaintiffs acknowledge that the historical analogues on which the panel relied are so numerous "[t]here is not sufficient space" to discuss them in the rehearing petition. *May* Pet. 11; *see* Opn. 40-41. As the panel explained, "as soon as modern parks arose, municipalities and states enacted laws prohibiting the carrying of firearms into parks." Opn. 43.

In addition, plaintiffs elected to present a facial challenge to the prohibition on carrying in parks, which undermines their arguments for further review. *See generally Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024) ("NetChoice

13

chose to litigate these cases as facial challenges, and that decision comes at a cost.").  Plaintiffs argue that even if urban parks may be sensitive places, some rural parks "are not 'sensitive.'"  *May* Pet. 10.  But California Penal Code section 26230(a)(12) applies to any "park" that is open to the public.  As the panel explained, plaintiffs' facial challenge to that provision is likely to fail because "the national historical tradition of banning firearms at a wide array of parks" supports modern restrictions in "many, if not all," of the parks in California.  Opn. 44.[6]

The *May* plaintiffs also contend (*May* Pet. 8-10) that the panel erred in holding that California's restriction on firearms in places that serve alcohol is likely constitutional.  *See* Opn. 49-50.  The panel relied on "traditions of separating firearms and the intoxicated and of separating firearms and crowds," as well as "several laws that are directly on point."  Opn. 48, 49.  Based on all those laws, the panel concluded that "bars and restaurants that sell alcohol are among the Nation's 'sensitive places' where firearms may be prohibited."  Opn. 49.  Plaintiffs contend that some of these historical analogues are too different from California's law

---

[6] Plaintiffs contend for the first time that the panel should have affirmed the injunction "at least as to subsection (a)(13)" (*May* Pet. 11-12 n.3), the provision that restricts firearms in state parks and other property controlled by state agencies. Cal. Penal Code § 26230(a)(13).  But plaintiffs' facial challenge to subsection (a)(13) is also unlikely to succeed.  Even if States could only ban firearms in *urban* parks, California's state parks system includes many such parks. *See, e.g.*, Cal. Code Regs., tit. 14, §§ 4753, 4754 (listing Old Town San Diego State Historic Park and Candlestick Point State Recreation Area, among others).

when considered in isolation. *May* Pet. 8-10; *see* Opn. 47-50. But as *Rahimi* instructs, a regulatory principle may emerge from the combination of "distinct legal regimes" considered "together"—and none of those regimes needs to be "identical" to the challenged law. 144 S. Ct. at 1899, 1901. The panel applied that instruction, while also identifying several direct analogues. Opn. 47-49. In addition, it is unclear how plaintiffs' facial challenge to this provision could succeed given their apparent disinterest in challenging its application as to "bars and nightclubs." *May* Pet. 8. If plaintiffs believe that "restaurants that also happen to serve alcohol" (*id.*) are materially different from bars and nightclubs, they are free to assert a narrower challenge on remand.

Finally, in analyzing historical analogues, the panel correctly rejected as "illogical" (Opn. 38) plaintiffs' argument that governments must identify analogues that were specific to concealed carry license holders. *See May* Pet. 12-13. The sensitive places analysis "concerns categories of property, not categories of people"; if the government may permissibly restrict firearms in a particular place, it may apply that restriction to everyone. Opn. 38. Indeed, if plaintiffs' theory were correct, modern governments might be powerless to prohibit concealed carry license holders from bringing firearms into *any* sensitive places— even schools and government buildings. *See* Opn. 39. Plaintiffs' theory cannot be reconciled with the principle that schools and government buildings are sensitive

15

places where firearms may "be prohibited consistent with the Second Amendment." *Bruen*, 597 U.S. at 30.

## CONCLUSION

The petitions for rehearing or rehearing en banc should be denied.

Dated:  October 29, 2024                    Respectfully submitted,

                                                *s/ Christopher D. Hu*
_____

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
CHRISTOPHER D. HU
*Deputy Solicitor General*
R. MATTHEW WISE
MARK R. BECKINGTON
*Supervising Deputy Attorneys General*
ROBERT L. MEYERHOFF
TODD GRABARSKY
JANE REILLEY
LISA PLANK
CAROLYN DOWNS
*Deputy Attorneys General*
*Attorneys for Defendant and Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

**9th Cir. Case Number(s)** 23-4354 and 23-4356

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[x] Prepared in a format, typeface, and type style that complies with Fed. R. App. P.

32(a)(4)-(6) and **contains the following number of words: <u>3,603</u>.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature**  <u>s/ Christopher D. Hu</u>    **Date**  <u>October 29, 2024</u>